IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| SOUTH CAROLINA ELECTRIC & GAS COMPANY, | ) Case No. 07av99999 <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) **COMPLAINT and DEMAND** <br> ) **FOR TRIAL BY JURY** |
| ALSTOM POWER INC., DUKE/FLUOR DANIEL, a Partnership; FLUOR DANIEL ILLINOIS, INC.; DUKE PROJECT SERVICES, INC.; FLUOR CORPORATION; and SPECTRA ENERGY CAPITAL, LLC, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

Plaintiff South Carolina Electric & Gas Company, by its attorneys Wills & Massalon, LLC and Sacks Montgomery, P.C., for its complaint against Alstom Power Inc., Duke/Fluor Daniel; Fluor Daniel Illinois, Inc.; Duke Project Services, Inc.; Fluor Corporation; and Spectra Energy Capital, LLC, alleges as follows:

THE PARTIES

1.  South Carolina Electric & Gas Company ("SCE&G") is a corporation organized under the laws of South Carolina, with its principal place of business located in Columbia, South Carolina.

2.  Alstom Power Inc. ("Alstom") is a corporation organized under the laws of Delaware, with its principal place of business located in Midlothian, Virginia.

3.  Duke/Fluor Daniel ("DFD") is a general partnership formed under the laws of North Carolina, whose general partners are Fluor Daniel Illinois, Inc. and Duke Project Services, Inc. DFD's principal place of business is located in Charlotte, North Carolina.

4. Fluor Daniel Illinois, Inc. ("Fluor Daniel Illinois") is a corporation organized under the laws of Delaware, with its principal place of business located in Irving, Texas.

5. Duke Project Services, Inc. ("Duke Project Services") is a corporation organized under the laws of North Carolina, with its principal place of business located in Charlotte, North Carolina.

6. Fluor Corporation is a corporation organized under the laws of Delaware, with its principal place of business located in Irving, Texas.

7. Spectra Energy Capital, LLC is a limited liability corporation organized under the laws of Delaware, with its principal place of business located in Charlotte, North Carolina, and is the successor-in-interest to the rights and liabilities of Duke Capital Corporation.

## JURISDICTION

8. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(2) because there is diversity of citizenship between plaintiff SCE&G and each of the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs

9. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(a).

## GENERAL ALLEGATIONS

10. On December 18, 2001, SCE&G and DFD entered into an agreement ("the EPC Contract"), under which DFD agreed to engineer, procure and construct a power plant, to be located on property owned by SCE&G in Jasper County, South Carolina, in exchange for the payment of $305,787,700.

11.     In connection with DFD's performance of the EPC Contract, DFD procured, installed and started up a Steam Turbine Generator and related equipment manufactured by Alstom ("the STG").

12.     The EPC Contract contained an express warranty, running from DFD to SCE&G ("the DFD Warranty"), which provided, in pertinent part, that DFD warranted that the STG would be of good design and workmanship, and free from defects.

13.     The DFD Warranty further provided that DFD would promptly undertake all repairs and replacements necessary to make the STG conform to the DFD Warranty.

14.     By written instrument dated December 18, 2001, Fluor Corporation guaranteed Fluor Daniel Illinois' performance of the EPC Contract, including the DFD warranty.

15.     By written instrument dated March 4, 2002, Duke Capital Corporation, the predecessor-in-interest to Spectra Energy Capital, LLC, guaranteed Duke Project Services' performance of the EPC Contract, including the DFD warranty.

16.     On or about September 27, 2001, DFD and Alstom entered into a Purchase Order ("the Purchase Order"), under which Alstom agreed to supply the STG for the price of $29,378,500.

17.     The Purchase Order contained an express warranty, running from Alstom to both DFD and SCE&G ("the Alstom Warranty"), which provided, in pertinent part, that Alstom warranted to DFD and SCE&G that the STG would conform to the specifications contained in the Purchase Order, would be of good quality, and would be free from defects in materials, design, and workmanship.

18. The Alstom Warranty further provided that Alstom would promptly undertake all repairs and replacements necessary to make the STG conform to the Alstom Warranty.

19. In or about April and May, 2004, SCE&G notified DFD and Alstom that the STG provided by Alstom was defective due to the excessive vibrations it experienced during operation.

20. In response, Alstom assured SCE&G that the vibrations the STG experienced during operation were acceptable, and would not affect the reliability or useful life of the STG.

21. Following SCE&G's notice of the excessive vibrations in April and May, 2004, Alstom did nothing to correct the excessive vibrations of the STG during operation.

22. Following SCE&G's notice of the excessive vibrations in April and May, 2004, DFD did nothing to correct the excessive vibrations of the STG during operation.

23. Subsequently, in April, 2005, Alstom performed warranty work on the STG to, among other things, repair damage to the STG caused by excessive vibrations.

24. Alstom concealed from SCE&G its warranty findings regarding the consequences of the excessive vibrations in the STG.

25. In February, 2006, Alstom scheduled further warranty repairs and modifications to the STG necessitated by the excessive vibrations, which repairs and modifications were to be performed by Alstom in March and April, 2006.

26. However, on February 26, 2006, prior to the performance by Alstom of the scheduled warranty repairs and modifications, excessive vibrations in the STG caused the

generator to short circuit, resulting in massive damage to its component parts, and putting it out of service for approximately two months.

27. SCE&G immediately notified DFD and Alstom of the failure and requested Alstom to make the necessary repairs to the STG on an emergency basis.

28. Alstom thereafter made repairs to the STG in order to place it back into operation.

29. SCE&G paid Alstom for these emergency repairs while reserving all of its warranty and contractual rights against DFD and Alstom.

30. Following Alstom's repairs, the STG continued to experience excessive vibrations in operation.

31. On December 21, 2006, SCE&G notified DFD and Alstom that SCE&G's investigation had established that the excessive vibrations in the STG which had caused the short circuit in February, 2006, was also damaging numerous other parts of the STG. SCE&G demanded that DFD and Alstom (1) compensate SCE&G for all damages SCE&G had incurred as a result of the defective STG, and (2) remedy the defects in the STG.

32. The STG supplied by Alstom and DFD was and is defective due to the excessive vibrations it experiences in operation.

33. DFD and Alstom have failed and refused to make the necessary repairs or replacements as demanded by SCE&G.

34. SCE&G has to date expended more than $4 million to repair the defective STG, and the STG is still defective due to the continuing excessive vibrations, which have caused, among other things:

       (1)    Instrumentation failures;
       (2)    Generator stator bar wedge loosening and loss of slot filler material;

(3) Injury to the generator stator windings;
(4) Shaft spiral vibration in the turbine bearings;
(5) Generator foundation stud failure;
(6) Generator winding spring plate failures;
(7) Generator round connection, resonance vibration, fatigue failure, insulation cracking, support loosening and dusting;
(8) Four-node generator stator core vibration;
(9) Turbine overflow pipe flange gasket failures and compensator cracking; and
(10) LP turbine shell, building and foundation vibrations.

35. Despite demand therefor, DFD and Alstom have refused, and continue to refuse, to compensate SCE&G for any of the damages SCE&G has suffered as a result of the defective STG supplied by DFD and Alstom, and have refused to remedy the defects in the STG.

### FIRST CAUSE OF ACTION (Against Alstom)

36. SCE&G repeats and realleges the allegations set forth in paragraphs 1 through 35.

37. Alstom has materially breached the Alstom Warranty.

38. Alstom acted in bad faith in its performance of the Purchase Order and the Alstom Warranty, and breached its fundamental obligations to SCE&G.

39. SCE&G's remedies under the warranty contained in the Purchase Order have failed of their essential purpose.

40. As a result of Alstom's breach of the Alstom Warranty, SCE&G has suffered damages in an amount in excess of $15 million.

### SECOND CAUSE OF ACTION
### (Against DFD, Fluor Daniel Illinois and Duke Project Services)

41. SCE&G repeats and realleges the allegations set forth in paragraphs 1 through 40.

42. DFD, Fluor Daniel Illinois and Duke Project Services materially breached the DFD Warranty.

43.  As a result of the breaches of the DFD Warranty, SCE&G has suffered damages in the amount in excess of $15 million.

### THIRD CAUSE OF ACTION (Against Fluor Corporation)

44.  SCE&G repeats and realleges the allegations set forth in paragraphs 1 through 43.

45.  Pursuant to its guarantee, Fluor Corporation is liable to SCE&G for all the damages it has suffered as a result of the defective STG.

### FOURTH CAUSE OF ACTION (Against Spectra Energy Capital, LLC)

46.  SCE&G repeats and realleges the allegations set forth in paragraphs 1 through 45.

47.  Pursuant to the guarantee of Duke Capital Corporation, Spectra Energy Capital, LLC is liable to SCE&G for all the damages it has suffered as a result of the defective STG.

### FIFTH CAUSE OF ACTION (Against Alstom)

48.  SCE&G repeats and realleges the allegations set forth in paragraphs 1 through 47.

49.  Alstom's assurances to SCE&G in April and May, 2004 ("the Assurances") that the vibrations in the STG were acceptable, and would not affect the reliability or useful life of the generator were false.

50.  The Assurances were material.

51.  At the time Alstom made the Assurances to SCE&G, Alstom either knew that the Assurances were false, or acted with reckless disregard for their falsity.

52.  Alstom intended SCE&G to act upon the Assurances by proceeding to operate the STG.

53.  SCE&G was unaware that the Assurances were false, and relied on the Assurances by proceeding to operate the STG.

54. SCE&G was entitled to, and did rely on, the Assurances in acting as it did, and would not have proceeded to operate the STG if it had known that the Assurances were false.

55. In addition, Alstom concealed material warranty findings arising from its April 2005 inspection of the STG, under circumstances where it had a duty to speak.

56. By virtue of Alstom's concealment, SCE&G was caused not to take remedial action.

57. By reason of the foregoing, SCE&G has suffered damages in the amount in excess of $15 million.

**WHEREFORE**, SCE&G demands a trial by jury and judgment against all defendants in an amount in excess of $15 million as proven at trial, together with interest and costs.

                s/ John A. Massalon
                John Massalon (ID #5227)
                Christy Ford Allen (ID # 7549)
                WILLS & MASSALON, LLC
                Post Office Box 859
                Charleston, SC 29402
                (843) 727-1144
                (843) 727-7696 (Facsimile)

                -and-
                David E. Montgomery
                Scott D. St. Marie
                SACKS MONTGOMERY, P.C.
                800 Third Avenue
                New York, NY 10022
                (212) 355-4660
                (212) 593-7257 (Facsimile)

                Attorneys for Plaintiff
                South Carolina Electric & Gas Company

Charleston, South Carolina
May 3, 2007